IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THE ESTATE OF JOHN FRANK GIBSON, JR.,
DECEASED, BY AND THROUGH ITS COURT
APPOINTED EXECUTRIX, JODY CUMMINS                          PLAINTIFF

v.                                    CASE NO. 4:23-CV-425-JM

JOHN FRANK GIBSON, III                                     DEFENDANT

### PLAINTIFF'S RESPONSE TO DEFENDANT JOHN FRANK GIBSON III'S OMNIBOUS MOTION TO: (1) COMPEL PLAINTIFF'S RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION; (2) COMPEL RULE 26(a)(1) INITIAL DISCLOSURES; (3) AWARD PAYMENT OF REASONABLE EXPENSES; AND (4) STAY DEADLINES FOR RULE 56(d) DISCOVERY AND SUPPLEMENTAL OPPOSITION TO SUMMARY JUDGMENT MOTION

Plaintiff, by its counsel, Barton & Roper, PLLC, and for Plaintiff' Response to Defendant John Frank Gibson III's Onmibous Motion to: (1) Compel Plaintiff's Responses to Interrogatories and Requests for Production; (2) Compel Rule 26(a)(1) Initial Disclosures; (3) Award Payment fo Reasonable Expenses; and (4) Stay Deadlines for Rule 56(d) Discovery and Supplemental Opposition to Summary Judgment Motion, states:

1. That Plaintiff denies that its responses to Defendant's discovery requests herein have been improper or are lacking.

2. That in response to paragraph 1 of Defendant's motion, Plaintiff denies that it has ignored and thwarted Defendant's serial efforts to confer about the estates deficient responses (they were not deficient) and asserted improper objections (they were not improper) to Defendant's First Set of Interrogatories and Requests for Production of Documents and Initial Disclosures.

1

3. That Defendant denies that it has failed to meet or engage Plaintiff in regard to discovery issues.

4. That attached hereto is Exhibit 1 is Defendant's full and complete responses to Defendants initial discovery request.

5. That, in addition, Jody Cummins, the Plaintiff's executrix, has made herself available to a discovery deposition from Defendant's counsel of approximately 6 hours in length on February 6, 2024 and February 7, 2024.

6. That, in addition, Plaintiff has cooperated in Defendant's discovery deposition of Renee Treadwell (the widow of the decedent and the initial executrix of the his estate) lasting approximately 4 hours on January 31, 2024.

7. That the Plaintiff has cooperated in the discovery deposition of Caroline Jones (a daughter of the decedent) lasting approximately 4 hours.

8. That the Plaintiff has received a second discovery request from Defendant to which Plaintiff is in the process of preparing a response and intends to cooperate pursuant to applicable rules and law.

9. That, in addition, at the conclusion of the discovery deposition of Renee Treadwell, Whit Barton, a counsel for the Plaintiff herein, informed Defendant's counsel that he would be available to confer with Defendant's counsel upon any discovery issues. Defendant's counsel has made no effort to follow up upon that invitation now filing the Motion to which Plaintiff now responds.

Wherefore, Plaintiff prays that Plaintiff' Response to Defendant John Frank Gibson III's Onmibous Motion to: (1) Compel Plaintiff's Responses to Interrogatories and Requests for

2

Production; (2) Compel Rule 26(a)(1) Initial Disclosures; (3) Award Payment fo Reasonable

Expenses; and (4) Stay Deadlines for Rule 56(d) Discovery and Supplemental Opposition to

Summary Judgment Motion, be denied, that Defendant take nothing there under and for all

further and lawful relief to which Plaintiff is entitled it will ever pray.

Barton & Roper, PLLC
PO Box 507
Monticello, AR 71657
(870) 367-6288
wbarton@bartonandroper.com

By: _____
Whit Barton        (79010)

## CERTIFICATE OF SERVICE

I, Whit Barton, a member of Barton & Roper, PLLC, attorney for Plaintiff, hereby certify that on this ____ day of February, 2024, a copy of the foregoing was filed in the Court's electronic filing system, which shall send notification to all counsel of record.

Andrew T. Thomasson
Thomasson PLLC
350 Springfield Ave, Suite 200
Summitt, NJ 07901
andrew@thomassonpllc.com

Donald S. Maurice, Jr.
Maurice Wutscher LLP
5 Walter E. Foran Blvd, Suite 2007
Flemington, NJ 08822
dmaurice@mauricewutscher.com

_____
Whit Barton

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**THE ESTATE OF JOHN FRANK GIBSON, JR.,
DECEASED, BY AND THROUGH ITS COURT
APPOINTED EXECUTRIX, JODY CUMMINS**                              **PLAINTIFF**

**VS.**                              **CASE NO. 4:23-cv-425-JM**

**JOHN FRANK GIBSON, III**                              **DEFENDANT**

**THE ESTATE'S RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES
AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 33 and 34, plaintiff the Estate of John Frank Gibson, Jr., Deceased, by and through its court appointed executrix, Jody Cummins (the "Estate") hereby responds and specifically objects to defendant John Frank Gibson, III's ("Defendant") First Set of Interrogatories and Requests for Production of Documents, as follows:

## PRELIMINARY STATEMENT

The Estate generally objects to any instruction or definition to the extent it attempts to impose obligations and procedures on the Estate that differ from those established by the Federal Rules of Civil Procedure.  The Estate responds below as is required by the Federal Rules of Civil Procedure.

## REPONSES AND OBJECTIONS TO
## DEFENDANT'S INTERROGATORIES

**INTERROGATORY NO. 1:** Please state the name and every person who supplied information or documents used in preparation of the responses to these Interrogatories and Requests for Production of Documents.

**RESPONSE**:  Jody Cummins, with the assistance of counsel.

**INTERROGATORY NO. 2:** State the name, address, and telephone number of every person You believe has knowledge of the facts and circumstances surrounding the allegations contained in Plaintiff's Complaint or Defendant's Answer.

**RESPONSE**: Objection.  This interrogatory is overly broad to the extent it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine, and also violative of that privilege and that doctrine.  Subject to and without waiving its specific objections, the Estate does not know at this time all persons who have knowledge of the facts and circumstances surrounding the allegations in this case, as discovery has just begun and continues.  At this time, the Estate is aware of the following persons who have knowledge relevant to the claims and defenses in this lawsuit:

- Jody Cummins, 1818 N. Taylor St., #301, Little Rock, AR 72207, who may be contacted through undersigned counsel;

- Jill Gibson, 2989 SW Montgomery Drive, Portland, OR 97201, who may be contacted through undersigned counsel;

- Caroline Jones, 1208 Oxford Ave., Benton, AR 72019, who may be contacted through undersigned counsel;

- Jamie Kirtley, 11 Valley Estates Dr., Little Rock, AR 72212, who may be contacted through her counsel;

- Defendant John Frank Gibson, III, who purportedly resides in Kansas, who may be contacted through his counsel; and

- John Ogles, Ogles Law Firm, 200 S. Jeff Davis St., Jacksonville, AR 72076, (501) 982-8339.

The Estate reserves the right to supplement this response in accord with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 3:** State the name, address, and telephone number of every lay witness You intend to call at the trial of this case.

**RESPONSE:** Objection.  This interrogatory is overly broad to the extent it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine, and also violative of that privilege and that doctrine.  Subject to and without waiving its specific objections, the Estate states that discovery has just begun and continues and all decisions as to whom the Estate may call to testify on its behalf in this matter have not been made.  At this time, the Estate anticipates the following individuals may be called to testify at the trial of this case:

- Jody Cummins, 1818 N. Taylor St., #301, Little Rock, AR 72207, who may be contacted through undersigned counsel;

- Jill Gibson, 2989 SW Montgomery Drive, Portland, OR 97201, who may be contacted through undersigned counsel;

- Caroline Jones, 1208 Oxford Ave., Benton, AR 72019, who may be contacted through undersigned counsel;

- Jamie Kirtley, 11 Valley Estates Dr., Little Rock, AR 72212, who may be contacted through her counsel;

- John Ogles, Ogles Law Firm, 200 S. Jeff Davis St., Jacksonville, AR 72076, (501) 982-8339;

- Any person who appears in documents and other items provided in discovery by the parties;

- Any person deposed in this case, to the extent not objectionable by the Estate; or

- Any person necessary to authenticate a document.

The Estate reserves the right to supplement this response.  Further, the Estate will disclose witnesses in the time and manner set by the Federal Rules of Civil Procedure and any orders of this Court.

**INTERROGATORY NO. 4:** Identify each expert witness You may or will call at the trial of this case and, for each person listed, please provide the following information:

    a.    the subject matter on which each expert is expected to testify;

    b.    the substances of the facts and opinions to which the expert is expected to testify;

    c.    a summary of the grounds for each expert's opinion;

    d.    the educational background for each expert; and

    e.    a summary of each expert's qualifications to serve as an expert witness.

**RESPONSE**: Objection.  This interrogatory is overly broad to the extent it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine, and also violative of that privilege and that doctrine.  Subject to and without waiving its specific objections, the Estate states that discovery has just begun and continues.  The decision as to whom the Estate may or will call as an expert witness, if any, has not been made.  Currently, the Estate doubts that it will have an expert.  The Estate will disclose any expert witness(es) in the time and manner set by the Federal Rules of Civil Procedure and any orders of this Court.

**INTERROGATORY NO. 5:** Identify and describe in detail all Communications between Jody Cummins and the Beneficiaries from the last two years regarding Defendant, the Decedent, this lawsuit, mediation with Defendant, or communications with the Decedent.

**RESPONSE**:  Objection.  This interrogatory is overly broad in time, excessive in scope, and unduly burdensome because the request is not limited to communications related to the parties' claims or defenses in this case.  Further, this interrogatory seeks information that is not relevant to the claims or defenses in this case because communications unrelated to this lawsuit "regarding Defendant, the Decedent, ... or communications with the Decedent" are clearly irrelevant.  Moreover, this interrogatory is not likely to lead to the discovery of admissible evidence because the majority of the communications are not related to the parties' claims or defenses in this case.  Subject to and without waiving its specific objections, see documents attached as Gibson 001-038.  Further, the Estate is still

in the process of gathering and reviewing documents. If it identifies any additional responsive documents, it will supplement this response in accord with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 6:** Identify and describe each and every Communication between Jody Cummins and the Decedent in the six-month period preceding and through the day of Decedent's death.

**RESPONSE**: Objection. This interrogatory is overly broad in time, excessive in scope, and unduly burdensome because it apparently requests every communication between Jody Cummins and the Decedent for a six-month period prior to his death, regardless of whether the communications relate at all to this lawsuit. The Estate further objects because this interrogatory seeks information that is not relevant to the claims or defenses in this case because communications between Jody Cummins and the Decedent that are unrelated to this lawsuit are clearly irrelevant. Moreover, this interrogatory is not likely to lead to the discovery of admissible evidence because the majority of the communications are not related to the parties' claims or defenses in this case. Subject to and without waiving its specific objections, the Estate is still in the process of gathering and reviewing documents. If it identifies any responsive documents, it will supplement this response in accord with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 7:** Identify and describe any Communications between Jody Cummins and the Beneficiaries Related to the Notes or the Will.

**RESPONSE**:  Objection.  This interrogatory is overly broad, excessive in scope, and unduly burdensome in that the request is not limited to any specific timeframe.  The Estate further objects because this interrogatory seeks information that is not relevant to the claims or defenses in this case because communications about the Decedent's estate plan are parol evidence and not relevant to the payment terms of the promissory notes at issue.  Subject to and without waiving its specific objections, see documents attached as Gibson 001-038.  Further, the Estate is still in the process of gathering and reviewing documents.  If it identifies any additional responsive documents, it will supplement this response in accord with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 8:** Identify and describe any Communication between Jody Cummins and John Frank Gibson, Jr. Related to the Notes, the Will or the Decedent.

**RESPONSE**:  Objection.  This interrogatory is overly broad, excessive in scope, and unduly burdensome in that the request is not limited to any specific timeframe.  The Estate further objects because this interrogatory seeks information that is not relevant to the claims or defenses in this case because communications about the Decedent's estate plan are parol evidence and clearly not relevant to the payment terms of the promissory notes at issue.  Further, this interrogatory is vague and ambiguous because it apparently requests communications between Jody Cummins and the Decedent "[r]elated to the Decedent," regardless of whether the communications relate at all to this lawsuit.  Subject to and without waiving its

specific objections, the Estate is still in the process of gathering and reviewing documents.   If it identifies any responsive documents, it will supplement this response in accord with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 9:** Identify any contribution, monetary or otherwise, that Jody Cummins or any Beneficiary has made to or for the Property during the Relevant Time Period.

**RESPONSE**:  None, because the family farm located in Drew County, Arkansas was mostly not operating during the Relevant Time Period.  When the farm was operating, other individuals leased and/or operated the farm during the Relevant Time Period, including Defendant.  Thus, they would be responsible for contributions to the Property.

**INTERROGATORY NO. 10:** Identify and describe any Communications between Jody Cummins and John Frank Gibson, Jr. or any of the Beneficiaries Related to any details around the sale of the Property, including, but not limited to, any contingency agreement with Mr. Gibson associated with the potential sale.

**RESPONSE**: Objection.  This interrogatory is overly broad, excessive in scope, and unduly burdensome in that the request is not limited to any specific timeframe.  The Estate further objects to this interrogatory to the extent that it seeks information and/or documents outside the possession, custody, or control of the Estate.  Subject to and without waiving its specific objections, Jody Cummins discovered that the farm sale closed in 2019 through verbal conversations with the

Decedent and Beneficiaries.  The Estate does not believe it has any responsive documents.

**INTERROGATORY NO. 11:** Identify and describe any basis for damages You claim to have suffered as alleged in Paragraph 24 of the Complaint.

**REPONSES:**  The Estate's bases for damages are the two promissory notes, for $832,000 and $10,000, that are the subject of the Estate's complaint against Defendant.  Because Defendant has failed to pay the amounts owed when due, the Estate has been damaged in an amount not less than $842,000.  By the terms of the notes, Arkansas law at Ark. Code Ann. § 16-22-308, and otherwise, based on the breaches of the notes, the Estate is also entitled to its attorneys' fees, costs, and interest.  The notes are obviously attached to the Estate's complaint.

**INTERROGATORY NO. 12:** Identify and describe any Documents or Communications in Your possession, custody or control that were made or that take place during the Relevant Time Period related to the value of the Property.

**RESPONSE:**  Other than the documents provided to the Estate by Defendant during mediation, the Estate has no other responsive documents.

**INTERROGATORY NO. 13:** Identify and describe in detail all Communications between Jody Cummins and the Beneficiaries related to whether any amount of the alleged debt associated with the Notes should be discounted, reduced or forgiven in any amount.

**RESPONSE:**  Objection.  This interrogatory is overly broad, excessive in scope, and unduly burdensome in that the request is not limited to any specific

timeframe.  Subject to and without waiving its specific objections, see all documents attached hereto, including but not limited to Gibson 026 and 032.  Further, the Estate is still in the process of gathering and reviewing documents.  If it identifies any additional responsive documents, it will supplement this response in accord with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 14:** Identify and describe any Communications that include Jody Cummins or any Beneficiary Related to the costs associated with the Property during the Relevant Time Period.

**RESPONSE**:  Objection.  The Estate objects to this interrogatory to the extent that it seeks information and/or documents outside the possession, custody, or control of the Estate.  Subject to and without waiving its specific objections, Ms. Cummins recalls verbal communications with Defendant, during which she requested Defendant to provide proof/documentation of the costs associated with the family farm.  Defendant never provided any any such proof/documentation.  The Estate has no other responsive communications.

**INTERROGATORY NO. 15:** Identify and describe in detail all Communications between Jody Cummins and Whit Barton related to the Decedent's estate planning, the Will or the Notes.

**RESPONSE**:  Objection.  The Estate objects to this interrogatory because it clearly seeks to invade the protections of attorney-client privilege and exceeds the scope of allowable discovery under Rule 26 of the Federal Rule of Civil Procedure. The Estate further objects to this interrogatory to the extent that it seeks the

disclosures of mental impressions regarding strategy that are protected by the attorney-client privilege and the work product doctrine. This interrogatory is also overly broad, excessive in scope, and unduly burdensome because it is not limited to any specific timeframe. Additionally, this interrogatory seeks information that is not relevant to any party's claims or defenses and is not likely to lead to the discovery of admissible evidence because the Decedent's estate plan documents are irrelevant to the payment terms of the notes at issue. Lastly, the Estate objects to this interrogatory to the extent that it seeks information and/or documents outside the possession, custody, or control of the Estate. Subject to and without waiving its specific objections, please see non-privileged documents attached as Gibson 001-2, 011-16, and 021-26.

**INTERROGATORY NO. 16:** Identify and describe in detail all Communications between the Decedent and Whit Barton related to the Decedent's estate planning, the Will or the Notes.

**RESPONSE:** Objection. The Estate objects to this interrogatory because it clearly seeks to invade the protections of attorney-client privilege and exceeds the scope of allowable discovery under Rule 26 of the Federal Rule of Civil Procedure. The Estate further objects to this interrogatory to the extent that it seeks the disclosures of mental impressions regarding strategy that are protected by the attorney-client privilege and the work product doctrine. This interrogatory is also overly broad, excessive in scope, and unduly burdensome because it is not limited to any specific timeframe. Additionally, this interrogatory seeks information that is

not relevant to any party's claims or defenses and is not likely to lead to the discovery of admissible evidence because the Decedent's estate plan documents are irrelevant to the repayment terms of the notes at issue. Lastly, the Estate objects to this interrogatory to the extent that it seeks information and/or documents outside the possession, custody, or control of the Estate. Subject to and without waiving its specific objection, and pursuant to the Estate's obligations under Fed. R. Civ. P. 26(b)(5), Whit Barton represented the Decedent in his legal affairs, including but not limited to his estate planning, Will, and the notes at issue. There exists documents and communications in the ordinary course of Mr. Barton's legal representation of the Defendant that are not being produced because they are clearly protected by the attorney-client privilege and/or attorney work-product doctrine.

**INTERROGATORY NO. 17:** Identify and describe any Communications between Jody Cummins and the Beneficiaries Related to John Frank Gibson, Jr.'s intent to amend or terminate his Will.

**RESPONSE**: Objection. This interrogatory is overly broad, excessive in scope, and unduly burdensome in that the request is not limited to any specific timeframe. Moreover, this interrogatory is not likely to lead to the discovery of admissible evidence because communications related to the Decedent's estate plan documents are parol evidence and irrelevant to the claims and defenses in this lawsuit. Subject to and without waiving its specific objections, Jody Cummins had various verbal conversations with the Beneficiaries related to Decedent's Will, but

does not recall specifics. Further, the Estate is still in the process of gathering and reviewing documents. If it identifies any additional responsive documents, it will supplement this response in accord with the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 18:** Identify and describe and Documents or Communications between Jody Cummins and John Frank Gibson, Jr. or any Beneficiary Related to any debt associated with the Property during the Relevant Time Period, including, but not limited to, any debt with the Internal Revenue Service agency.

**RESPONSE:** Objection. This interrogatory is not likely to lead to the discovery of admissible evidence because communications related to debt associated with the family farm are parol evidence and irrelevant to the claims and defenses in this case. Subject to and without waiving its specific objections, the Estate states Jody Cummins recalls verbal communications with other Beneficiaries in 2016 and 2017 related to a tax lien on the family farm. However, Ms. Cummins does not remember the specifics of these conversations, other than general knowledge that a tax lien existed. See also Gibson 026.

**REPONSES AND OBJECTIONS TO
DEFENDANT'S REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION 1:** Produce all Documents Related to or evidencing the testamentary documents of John Frank Gibson, Jr.

**RESPONSE:** Objection. This request is vague and ambiguous in that it does not explain what is meant by "testamentary documents of John Frank Gibson, Jr." Further, the burden of producing any such documents is substantially the

same or less for Defendant because the Decedent's Will and other related documents are of public record in the probate case, Case No. 22PR-20-118.

**REQUEST FOR PRODUCTION 2:** Please produce each and every item of documentary, real, and demonstrative evidence you may introduce into evidence at any hearing or trial in this case, including, but not limited to, documents, writings, photographs, diagrams, and charts.

**RESPONSE:** Objection.  The Estate objects to this request to the extent that it seeks the disclosures of mental impressions regarding strategy or otherwise that are protected by the attorney-client privilege and the work product doctrine. Subject to and without waiving its specific objections, the Estate has not yet determined what evidence that it may introduce into evidence at any hearing or trial of this matter, as discovery has just begun and continues.  The Estate may use as evidence at any hearing or trial of this case documents attached as Gibson 001-038.  The Estate reserves the right to introduce at any hearing or trial of this case, without limitation, (i) any document produced herein or later supplemented to any response, (ii) any document prepared by or reviewed by any expert retained by any of the parties to the extent not otherwise objectionable, (iii) any document identified by any party or witness in this matter as a document that is relevant to any issue involved in this lawsuit and that is not otherwise objectionable, (iv) any document exchanged by the parties in discovery, or otherwise produced in discovery to the extent not otherwise objectionable, and (v) any document attached to the complaint or any pleading or motion filed in this case.

**REQUEST FOR PRODUCTION NO. 3:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 6.

**RESPONSE:** See the Estate's Response to Interrogatory No. 6, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 4:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 7.

**RESPONSE:** See the Estate's Response to Interrogatory No. 7, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 5:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 8.

**RESPONSE:** See the Estate's Response to Interrogatory No. 8, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 6:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 9.

**RESPONSE:** See the Estate's Response to Interrogatory No. 9, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 7:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 10.

**RESPONSE:** See the Estate's Response to Interrogatory No. 10, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 8:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 11.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 11, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 9:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 12.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 12, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 10:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 13.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 13, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 11:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 14.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 14, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 12:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 15.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 15, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 13:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 16.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 16, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 14:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 17.

**RESPONSE**: See the Estate's Response to Interrogatory No. 17, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 15:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 18.

**RESPONSE**: See the Estate's Response to Interrogatory No. 18, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 16:** For each expert witness identified in response to Interrogatory No. 4, please produce the following:

> (a)     a complete statement of all opinions to be expressed and the basis and reasons thereof;

> (b)     all documents, and other data and information considered or relied upon by the witness in forming the opinions, including any scholarly treatises;

> (c)     any exhibits to be used as a summary of or support for the opinions;

> (d)     documents evidencing the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;

> (e)     documents evidencing the compensation to be paid for services of the expert witness; and

(f)      documents evidencing all of the cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 4, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 17:** Produce all Documents evidencing or Relating to your response to Interrogatory No. 5.

**RESPONSE**:  See the Estate's Response to Interrogatory No. 5, which is incorporated herein by reference.

**REQUEST FOR PRODUCTION NO. 18:** Produce all documentation evidencing Decedent's notes.

**RESPONSE**: Objection.  This request is vague and ambiguous as to the use of the term "notes" because "Notes" is defined as the two promissory notes executed by and between Defendant and the Decedent.  For the purposes of this response, the Estate assumes "notes" means the defined-term "Notes."  Subject to and without waiving its specific objections, see documents attached as Gibson 001-038.  Further, the Estate is still in the process of gathering and reviewing documents.  If it identifies any additional responsive documents, it will supplement this response in accord with the Federal Rules of Civil Procedure.

## VERIFICATION

I, Jody Cummins, based on reasonable inquiry, verify on behalf of the Estate, as its court appointed executrix, that the foregoing responses to the above interrogatories are true and correct to the best of my knowledge, information, and belief.

_____
Jody Cummins

Patrick D. Wilson
Bar Number 99073
*Attorneys for the Estate*
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: pwilson@wlj.com

- *And –*

Whit Barton
Bar Number 79010
*Attorneys for the Estate*
BARTON & ROPER, PLLC
P.O. Box 507
Monticello, Arkansas 71657
(870) 367-6288
FAX: (501) 376-9442
E-MAIL: wbarton@bartonandroper.com

## CERTIFICATE OF SERVICE

On November 17, 2023, a true and correct copy of the foregoing was served via electronic mail on counsel of record:

Betsy Baker
*bbaker@roselawfirm.com*
Luke Vance
*lvance@roselawfirm.com*

_____
Patrick D. Wilson

**From: Jody Cummins** jody@cumminsfamily.org
**Subject:** Fwd: Estate of John F. Gibson, Jr.
**Date:** October 22, 2021 at 2:47 PM



Begin forwarded message:

**From:** Jill Gibson <jgibson@lynchconger.com>
**Date:** October 20, 2021 at 12:14:47 PM CDT
**To:** Jody Cummins <jody@cumminsfamily.org>, carolinejones5166@gmail.com, jamie kirtley <jamiekirtley@sbcglobal.net>
**Subject: FW: Estate of John F. Gibson, Jr.**

Renee sent me this……

Jill Gibson | Partner
**Lynch Conger LLP**
Direct: 971.350.6394 |   Main: 541.383.5857

Practicing in Portland and Bend:
15350 SW Sequoia Parkway, Suite 250, Portland, Oregon 97224
1000 SW Disk Drive, Bend, Oregon 97702

**From:** Renee Treadwell <rtreadwell56@gmail.com>
**Sent:** Wednesday, October 20, 2021 8:13 AM
**To:** Jill Gibson <jgibson@lynchconger.com>
**Subject:** Fwd: Estate of John F. Gibson, Jr.

From my meeting with Whit.

Sent from my iPad



Gibson 001



From: **Jill Gibson** jgibson@lynchmurphy.com
Subject: RE:
Date: June 16, 2023 at 4:14 AM
To: jamie kirtley jamiekirtley@sbcglobal.net, Jody Cummins jody@cumminsfamily.org



Jamie,

I think a lot of my words have been misconstrued so I want to be clear about how I feel:

- I love you and miss you terribly.
- I do not think you killed Daddy and I don't remember ever saying that I thought you did.
- I am very willing to talk about things and repair our relationship.
- I wish you were visiting me in France. I invited you.
- I am sorry you are hurting so much. What can I do to help?
- Daddy told me multiple times that he wanted John to pay the note and I think Daddy would want him to do that. John has accused me of fraud and elder abuse and has threatened to have my law license revoked. He has threatened to contact my law firm. I have to legally defend myself from his false accusations to protect my livelihood and reputation. He left me no choice.

I would like for you to find a family therapist so that we can start family counseling when I return from France. If you do not, I will find someone and schedule a time. Everyone who wants to participate can participate.

I love you and France would be more fun if you were here!
Jill

Jill Gibson I Attorney at Law I Partner
Lynch Murphy McLane LLP
3 Centerpointe Dr., Ste. 160 Lake Oswego, OR 97035
Direct: 971-350-6394 I Main Office: 541.383.5857
jgibson@lynchmurphy.com  I  www.lynchmurphy.com

* Please note that I will be on sabbatical May, June, and July. If you need assistance while I'm out, please contact Peg Moore at 541-383-5857. Thank you!

-----Original Message-----
From: jamie kirtley <jamiekirtley@sbcglobal.net>
Sent: Thursday, June 15, 2023 2:39 PM
To: Jody Cummins <jody@cumminsfamily.org>; Jill Gibson <jgibson@lynchmurphy.com>
Subject:

Two and a half years ago, on the night that Daddy died, I was told by Mama that it was said that I gave Daddy Covid and killed him. Jody, your only response was "well she didn't say that to me." Jill, your response was two years later in a text saying that you never said that and that it was such a horrendous accusation that you didn't even respond. You were angry with me because I had "chosen to believe it", yet I simply stated what mama said and got no response. I don't know why she said it, but she did. I suppose I should have automatically assumed that she was either delusional or lying and never mentioned it.

█████████████████████████████████That is not what Daddy would want. He would say stop this... it's not worth it. Stop doing this to the family. Stop putting your mother through this. Stop giving away the money I left you to attorneys.

If someone were to ask you why you are estranged from me, I hope that you tell them the truth. I hope you tell them there were issues that I needed to discuss in order to heal our relationships and move forward, but that you would rather not "get down in the weeds." You "don't want to talk about "the stuff"." Tell them that we aren't that great at handling those types of talks and might not have a good outcome.

The outcome couldn't be much worse than what it is now. At least that's my opinion.
I'm trying to adjust to my new life, my life without my sisters... trying to adjust to the fact that my family will never be the same again... the family that I cherished is now destroyed.

Maybe someday I can accept it as well as it seems y'all have . I've been seeing Facebook pictures and it looks like everybody's been having a great time in France.
One of the worst parts of this whole mess is that Mama will more than likely go to her grave while her children are at odds. It breaks my heart.

Sent from my iPhone

Gibson 004

**From:** **John Gibson** peakrut@yahoo.com 
**Subject:** Re: A tombstone for Daddy
**Date:** August 22, 2022 at 7:28 PM
**To:** Caroline Jones carolinejones5166@gmail.com
**Cc:** Jamie Kirtley jamiekirtley@sbcglobal.net, Jill Gibson jgibson@lynchmurphy.com,  Renee Treadwell rtreadwell56@gmail.com,
jody cummins jody@cumminsfamily.org

Caroline, it was never supposed to be your business in the first place. The only reason it is, is because he signed his will under duress. He told them not to put that figure down. They didnt allow it to happen. Apparently youre having trouble grasping the truth. Why else would he say "dont worry, we're going to rip it up" 5 minutes after signing it???

It became your business through meddling, unethical conduct and not allowing the wishes of a dying man to be implemented as he saw fit. And that is a fact.

As far as using daddy for a bank -  He never once gave me money that wasnt supposed to be repaid. Ever. And he gave me zero money on the farm that was a gift. Also, he had free range to use any property I owned or managed. And he exercised that right quite frequently. In short, I made sure daddy was able to keep the things that made him happy. And I did a very good job at it.

 Did you use him as a bank during college? Did you pay him back? Because he never gave me a single penny for my college. Not one. I paid for it with my own pell grants. Jills college was paid for by triangle. Which is the same as the farm because it was all tied to the same debt.
Not sure who paid for jodys school but I am positive that daddy did not pay a dime on me or jamies education. Trying to say daddy favored me monetarily is far from the truth.

Hope that makes you feel better and not infringed upon. And yes we were all special to him. But only one person stepped up and risked everything to save farm. And that person was me. And I did because daddy asked me to. Not you. Not jill. Not anyone else. He asked me.

If you want to use that as leverage to try and take advantage of the situation, go for it. I totally expect it.



Sent from my iPhone

> On Aug 21, 2022, at 8:56 PM, Caroline Jones <carolinejones5166@gmail.com> wrote:
>
>
> It became my business when Daddy made it my business.  i.e. his will.  And I intend to collect on it unless you can PROVE otherwise.  You've had ample time to, so my guess is that you don't have anything to support your case.  If roles were reversed, I'd show y'all everything.  I'd explain everything with documentation.  You have not done that.  That is the problem.  And I didn't take any rights from daddy.  I was not there.  I knew nothing about all of this until his will. It's astounding how much money he loaned you, not including the farm.  And the rest of us were not mentioned as to owing the estate because we didn't use daddy as a bank.
>
> I have finally said what I have wanted to say to you.  I will not let you manipulate me into thinking you've been wronged and that Jill should lose her license.  We are all 50% John Frank Gibson.  Not just you.  We were all special to him.  Not just you.
>
> I am done
>
> On Sun, Aug 21, 2022 at 8:32 PM John Gibson <peakrut@yahoo.com> wrote:
>> John Ogles was not there. It was only daddy, jill and I. Jill and Renee both heard Daddy say he was going to tear up the will. They were in the room and Jill has acknowledged that he said it to me in text messages.
>> Daddy was taken advantage of. Plain and simple. He was not allowed to write his own will and now Daddys estate has sent me a demand letter for a fraudulent amount.
>> I paid for the farm. Fair and square. It is not and never was intended to be your inheritance. But I am sure that you will try all you can do to suck every penny out of me for something that is none of your business. It was mine and daddy's business. But yall took that right from him on his death bed. Jill, Renee and John Ogles.
>>
>> Im done talking about this. The sooner we wrap this up the better. Thanks.
>>
>> Sent from my iPhone

On Aug 21, 2022, at 6:34 PM, Caroline Jones <carolinejones5166@gmail.com> wrote:

John,

How would I know what communications you and Witt have had? However, I do know that you have barely acknowledged/explained to me (Only speaking for myself here) how you do not owe daddy's estate the amount that is listed in his Will. I trust that Jill is being truthful in her recollection of that night, as well as the other three people who were there: Daddy, Renee, & John Ogles.

I have put aside personal feelings in order to pursue what Daddy intended for me and my girls. He wanted that for EACH of us. You included. I can not standby and let you walk away with nearly a million dollars without an explanation.

I love you. You are my brother. Flesh and blood. Half of Daddy, like me, and your other 3 sisters. Who all deserve to know your side of things.

If you really knew me, you wouldn't be surprised by my reaction.

Caroline

On Sun, Aug 21, 2022 at 5:30 PM John Gibson <peakrut@yahoo.com> wrote:
  That is completely false statement, Caroline.



Gibson 006

Could you please provide me with any notes
that exist between my father and I?

Kind regards,

John Gibson III

What does that date say? I sent multiple emails and texts to both Whitt Barton and Renee from the very
beginning asking to please see any notes that may exist between daddy and I. But every single one of my
communications to them were completely ignored. As a member of the estate was being targeted for fraud, I had
a right to know, but they refused to give me the information I was asking for.

I even went by Whitts office and asked his secretary why he wont respond to me.

I expected this attitude from some people. But I didn't expect it from you. Have a nice day.

John

Sent from my iPhone

On Aug 21, 2022, at 10:34 AM, Caroline Jones <carolinejones5166@gmail.com> wrote:

John,

I'm highly offended that you have made zero effort to straighten this out on your end.  I'm highly offended you have taken my portion of my inheritance (and everyone else's) without one word of explanation.  Whether or not you yelled that night makes no difference to me.  Daddy wants you to do the right thing by us.

Caroline

On Sun, Aug 21, 2022 at 8:37 AM John Gibson <peakrut@yahoo.com> wrote:
I think what would make daddy happy is if Renee would quit telling people that I was yelling at him the night he wrote his will.
I do not know if she has memory issues or what. But I am am highly offended that she is making slanderous and derogatory statements about me and my fathers last interaction while he was alive. There is absolutely no excuse for that. Jill. You were there. You saw what happened. You were standing 3 feet from me.
I never said anything whatsoever above a normal tone. But for whatever reason, Renee is telling people that I was yelling at him and he had to stand up and calm me down. Which is an outright lie.

Renee, please get your facts straight. And stop slandering me and my fathers last interaction while he was alive. There is no excuse for that. None whatsoever.

I will work on daddy's tombstone. And Renee needs to work on telling the truth.

John

Sent from my iPhone

On Aug 19, 2022, at 2:23 PM, Caroline Jones <carolinejones5166@gmail.com> wrote:

He would absolutely love that we do this for him.  I'm in!

Thanks Jill!

On Fri, Aug 19, 2022 at 1:02 PM Renee Treadwell <rtreadwell56@gmail.com> wrote:
Thank you, Jill.  If you need me to do some leg work here.. I will be glad to!!

On Fri, Aug 19, 2022 at 12:23 PM Jill Gibson <jgibson@lynchmurphy.com> wrote:
Hello everyone:

I have coordinated with the guy – Barry Burchfield - who maintains the Old Troy Cemetery to get permission to put a tombstone there for Daddy at the spot we picked out in April.  He has tentatively agreed to this spot and I will follow up with him to get final approval.  There is a committee of people and a Trust Fund that oversees the grounds.

Barry is very helpful and has given me the name of a former classmate of his who owns a funeral home in Crossett.  I'll call that guy to get prices for a tombstone.  I think the tombstones are made in Star City so we should see if we can buy direct from them to lower the cost.  Regarding the cost, I'm hoping we can all split that.  I'll let you all know when I get final approval and when I get a price on a tombstone. Once the tombstone is ready, I assume we will want to have some sort of gathering to spread Daddy's ashes at the tombstone.

I think it is important that we put our differences aside and do this for Daddy.  It would make him happy.

Thanks,
Jill

**Jill Gibson** | Attorney at Law | Partner | **Lynch Murphy McLane LLP**
15350 S.W. Sequoia Parkway, Suite 250, Portland, Oregon 97224
Office: 541.383.5857 | Fax: 541.383.3968 | jgibson@lynchmurphy.com
www.lynchmurphy.com | Attorneys in Bend and Portland

Gibson 009



**From:** **Jill Gibson** jgibson@lynchmurphy.com
**Subject:** RE: Gibbs Ferguson
**Date:** June 20, 2022 at 5:47 PM
**To:** wbarton@bartonandroper.com, jody@cumminsfamily.org, carolinejones5166@gmail.com, jamie kirtley jamiekirtley@sbcglobal.net
**Cc:** rtreadwell56@gmail.com, jjones@bartonandroper.com

Hi Whit,



Thank you,
Jill

**Jill Gibson** | Attorney at Law | Partner | **Lynch Murphy McLane LLP**
15350 S.W. Sequoia Parkway, Suite 250, Portland, Oregon 97224
Office: 541.383.5857 | Fax: 541.383.3968 | jgibson@lynchmurphy.com
www.lynchmurphy.com | Attorneys in Bend and Portland



**From:** John Gibson [mailto:peakrut@yahoo.com]
**Sent:** Monday, June 20, 2022 10:40 AM

**Sent:** Monday, June 20, 2022 10:10 AM
**To:** wbarton@bartonandroper.com
**Subject:** Re: Gibbs Ferguson

Whit,

Im not opposed to selling the Roberson place on hwy 65. I have a full resolution in mind and I will agree to an appropriate resolution but in exchange for my agreement to recent proposals, the Estate and all its heirs must release me from any and all debt or obligations that have been alleged in the will, and that the debt be considered null, void and forgiven.

Sent from my iPhone

On Jun 5, 2022, at 2:03 PM, wbarton@bartonandroper.com wrote:

John,

    What are your thoughts on the sale.  Let me know if you have any questions.  Otherwise, I would like to let Gibbs know something in the next few days.

Whit Barton
BARTON & ROPER, PLLC.
P.O. Box 507
Monticello, AR  71657
(870) 367-6288 ext. 104

THIS ELECTRONIC COMMUNICATION IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED.  IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR PROTECTED FROM DISCLOSURE BY LAW.  IF YOU ARE NOT THE RECIPIENT TO WHOM THE COMMUNICATION IS DIRECTED, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE.

Gibson 012

**From:** John Gibson peakrut@yahoo.com
**Subject:** Re: Gibson Promissory Note
**Date:** June 21, 2022 at 10:39 AM
**To:** wbarton@bartonandroper.com
**Cc:** Jill Gibson jgibson@lynchmurphy.com, carolinejones5166@gmail.com, jamiekirtley@sbcglobal.net, jody@cumminsfamily.org, rtreadwell56@gmail.com, bbarton@bartonandroper.com



Hi Whit. I'd like to reply to everyone to make sure we are all on the same page.

I am not willing to compromise on my demand that I be released from any and all alleged debt to my fathers estate in return for me agreeing to sign off on any inheritance I would have been granted through his will.

Absent, that. There's going to be a battle. And I'm lawyering up.

Regards, John

On Jun 1, 2022, at 1:56 PM, wbarton@bartonandroper.com wrote:

1.   No.
2.   No.  While I do think that's a good idea, that is up to the 4 of you.
3.   No.

The only thing to sell prior to closing (or as part of the closing) would be the Highway 65 deal.

Thanks,
Whit Barton
BARTON & ROPER, PLLC.
P.O. Box 507
Monticello, AR  71657
(870) 367-6288 ext. 104

THIS ELECTRONIC COMMUNICATION IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED.  IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR PROTECTED FROM DISCLOSURE BY LAW.  IF YOU ARE NOT THE RECIPIENT TO WHOM THE COMMUNICATION IS DIRECTED, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE.

**From:** Jill Gibson [mailto:jgibson@lynchmurphy.com]
**Sent:** Wednesday, June 01, 2022 11:57 AM
**To:** wbarton@bartonandroper.com; carolinejones5166@gmail.com; jamiekirtley@sbcglobal.net; jody@cumminsfamily.org; peakrut@yahoo.com
**Cc:** rtreadwell56@gmail.com; bbarton@bartonandroper.com
**Subject:** RE: Gibson Promissory Note

Hi Whit,

Thank you for your email and explanation of the proposal that will be presented to the court on July 6, if the hearing is necessary.

To ensure that I understand the proposal, are you proposing that the estate sell the

following land before the estate closes:

1. ½ interest in Ashley County land $10,000
2. Monticello lots $16,500
3. ½ interest in Dermott lots $24,750

Thank you,
Jill

**Jill Gibson** | Attorney at Law | Partner | **Lynch Murphy McLane LLP**
15350 S.W. Sequoia Parkway, Suite 250, Portland, Oregon 97224
Office: 541.383.5857 | Fax: 541.383.3968 | jgibson@lynchmurphy.com
www.lynchmurphy.com | Attorneys in Bend and Portland


**From:** wbarton@bartonandroper.com <wbarton@bartonandroper.com>
**Sent:** Wednesday, June 1, 2022 9:18 AM
**To:** carolinejones5166@gmail.com; jamiekirtley@sbcglobal.net; Jill Gibson
<jgibson@lynchmurphy.com>; jody@cumminsfamily.org; peakrut@yahoo.com
**Cc:** rtreadwell56@gmail.com; bbarton@bartonandroper.com
**Subject:** FW: Gibson Promissory Note

I received a call from Gibbs Ferguson (a lawyer in McGehee) last week. Gibbs has a client that wants to buy land that the estate owns an interest in. As I appreciate it, the land is near the Y that was left to John in the will. Gibbs tells me that the land was originally purchased by Jack Gibson and John Gibson, Sr. Therefore, the estate owns an undivided one-fourth interest in the land. The offer is for $100,000. I understand the Jack's heirs and Chuck are in agreement.

The estate can sell this land if all five of you agree. Given John's debt to the estate and the terms of the will, the net proceeds would ultimately be distributed to Caroline, Jamie, Jill and Jody. Let me know if you have any questions.

Beyond that tract of land, there is the issue of valuing John's interest in the remainder estate for the purpose of crediting his debt to the estate. I am asking Josh McKiever (a realtor who works almost exclusively in timberland) to give me his opinion of the 20 acres in Ashley County that the estate owns an undivided one-half interest in. We could get appraisals on the other tracts, but that seems to Renee to be cost prohibitive. Dr. Barrett Brown has offered to purchase the lots behind the personal residence and that offer was declined. The offer was for $15,000. We are going to propose 110% of that number for a valuation of $16,500. That leaves the various lots around Dermott. We are going to propose the valuation used by the county tax assessor. Those figures are in the inventory and they total $24,750.

We presently have about $50,000 in the bank.

Therefore, the residuary estate would approximate:

1. Cash $50,000
2. ½ interest in Ashley County land $10,000
3. Monticello lots $16,500

Gibson 014

   4. ½ interest in Dermott lots $24,750

    Total of $101,250 less fees and expenses of $5,000 for a net of $96,250. John's 1/5 would be $19,050. Add to that the land near the Y at $25,000, his credit would be $44,050.

    The hearing is scheduled of July 6. That is an approximation of what Renee will present. If you all indicate your agreement, I will prepare an order for you to review. If that proves to be agreeable, you can consent. If we have all 5 consents, the hearing can be avoided. Otherwise, that will be the proposal. Let me know if you have any questions about either the land sale of the final order.

Thanks,
Whit Barton
BARTON & ROPER, PLLC.
P.O. Box 507
Monticello, AR  71657
(870) 367-6288 ext. 104

THIS ELECTRONIC COMMUNICATION IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR PROTECTED FROM DISCLOSURE BY LAW. IF YOU ARE NOT THE RECIPIENT TO WHOM THE COMMUNICATION IS DIRECTED, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE.

**From:** jjones@bartonandroper.com [mailto:jjones@bartonandroper.com]
**Sent:** Wednesday, June 01, 2022 10:28 AM
**To:** wbarton@bartonandroper.com
**Subject:** Gibson Promissory Note

See attached promissory notes and the email addresses below.

| | |
|---|---|
| jody@cumminsfamily.org | Jody Cummins |
| jamiekirtley@sbcglobal.net | Jamie Kirtley |
| carolinejones5166@gmail.com | Caroline Jones |
| peakrut@yahoo.com | John Gibson III |
| Jgibson@lynchmurphy.com | Jill Gibson |
| rtreadwell56@gmail.com | Renee Treadwell |

# Joan Jones

Barton & Roper, PLLC
PO Box 507
Monticello, AR  71657
(870)367-6288

Gibson 016

**From:** Jill Gibson jgibson@lynchmurphy.com
**Subject:** RE: Hello
**Date:** August 22, 2022 at 6:30 PM
**To:** Johnson Ogles jogles@aol.com, Jody Cummins jody@cumminsfamily.org



My dad lost $$$$!  He even brought me into the fold and I lost $.

I think my dad was taken advantage of big time, but he was too nice to stop working for free.  I finally told Daddy I was out, but he kept providing free legal work.  I don't think he even got any tomatoes or buckets of crawdads out of the deal. 😊

John, have your ears been burning?

> On Sun, Aug 21, 2022 at 8:32 PM John Gibson <peakrut@yahoo.com> wrote:
> John Ogles was not there. It was only daddy, jill and I. Jill and Renee both heard Daddy say he was go to tear up the will. They were in the room and Jill has acknowledged that he said it to me in text messages.
> Daddy was taken advantage of. Plain and simple. He was not allowed to write his own will and now Daddys estate has sent me a demand letter for a fraudulent amount.
> I paid for the farm. Fair and square. It is not and never was intended to be your inheritance. But I am sure that you will try all you can do to suck every penny out of me for something that is none of your business. It was mine and daddy's business. But yall took that right from him on his death bed. Jill, Renee and John Ogles.
>
> Im done talking about this. The sooner we wrap this up the better. Thanks.
>
> Sent from my iPhone

For more episodes of the Twilight Zone, tune in to KJOHN, 666 FM, at anytime of day.

John – are you still coming out to Oregon??

**Jill Gibson** | Attorney at Law | Partner
**Lynch Murphy McLane LLP**
15350 S.W. Sequoia Parkway, Suite 250, Portland, Oregon 97224
Direct: 971-350-6394 | Main Office: 541.383.5857
jgibson@lynchmurphy.com | www.lynchmurphy.com

**From:** Johnson Ogles <jogles@aol.com>
**Sent:** Monday, August 22, 2022 4:11 PM
**To:** Jody Cummins <jody@cumminsfamily.org>; Jill Gibson <jgibson@lynchmurphy.com>
**Subject:** Fw: Hello

I met one of your Dad's longtime friends today.  He said he, JFG and Zach Mclendon went in business together in construction and he and your Dad lost $$.  He is retired lawyer from Austin Texas but from Arkansas and now retired in Hot Springs.

See below and take care.

Gibson 017

John Ogles
Ogles Law Firm, P.A.
200 South Jeff Davis
Jacksonville, Ark 72076
Ph 501.982.8339
Fax 501.985.1403
Licensed in Ark, Tx, US Tax and Supreme Court.


Begin forwarded message:

On Monday, August 22, 2022, 5:49 PM, ronnie minnick <reata1424@att.net> wrote:

> Pleasure visiting at the Touchdown Club today.  Long time Razorback fan.
>
> If you are going to be on Lake Hamilton Saturday, Sept 3, drop by for snacks, drinks and watch some of Arkansas game.  We have docking facilities available.  Having a few people over.  Address is 217 Lookout Point, Unit 1, Hot Spring.  501.282.6008, right beside Arch Isle
>
> Ronnie Minnick

Gibson 018



**From:** **John Gibson** peakrut@yahoo.com
**Subject:** Re: Information
**Date:** June 27, 2023 at 7:13 AM
**To:** Caroline Jones carolinejones5166@gmail.com, jody cummins jody@cumminsfamily.org, Jamie Kirtley jamiekirtley@sbcglobal.net, Jill Gibson jgibson@lynchmurphy.com, Renee Treadwell rtreadwell56@gmail.com

ALSO. Renee breached her fiduciary duty by lying to Jamie not once, but twice regarding daddy and I's last interaction while he was alive - all in order to try and sway Jamie on yall's side.

That is ILLEGAL! And its a LIE. It is SLANDER.

And I fully intend to hold her accountable for these actions - And everyone else involved in this fraud.

Good luck to all. The truth is on my side. And I am going to prove it beyond a shadow of doubt.

John.



Sent from my iPhone

On Jun 27, 2023, at 6:27 AM, John Gibson <peakrut@yahoo.com> wrote:

Caroline. You accused me of using daddy as a bank. You have no idea what you are talking about, none whatsoever.

I WAS THE BANK.

And you are suing me against daddy's wishes. Don't ever claim you did not know the truth. Ever.

Also, Charles Sidneys email shows the value that the IRS gave for the farm. And at that valuation I should have paid $1.28million for the ENTIRE farm.  BUT I paid $1.35million just for Charles Sidneys half and daddy was ok with it. Why??? Because he had ZERO equity in the farm. He actually had negative equity.

Next time you accuse me of using daddy as a bank, please get your facts straight before speaking about things you know nothing about.

And always remember you have zero respect for daddy and his last wishes, even after his death. None of you do, well, except for jamie.

<IMG_1637.jpeg>




<IMG_1700.jpg>


<IMG_1706.jpg>


<IMG_1702.jpg>

Sent from my iPhone

Gibson 020

**From:** John Gibson peakrut@yahoo.com
**Subject:** Re: John Frank Gibson Estate
**Date:** February 14, 2022 at 8:04 AM
**To:** wbarton@bartonandroper.com
**Cc:** jody cumminsfamily.org jody@cumminsfamily.org, jamiekirtley@sbcglobal.net, carolinejones5166@gmail.com,
rtreadwell56@gmail.com, jjones@bartonandroper.com, bbarton@bartonandroper.com

11 month old email to Whit that I never got a response to.



Gibson 021



Kind regards,

John Gibson III

On Feb 11, 2022, at 2:25 PM, wbarton@bartonandroper.com wrote:





Thanks,
Whit Barton
BARTON & ROPER, PLLC.
P.O. Box 507
Monticello, AR  71657
(870) 367-6288 ext. 104

THIS ELECTRONIC COMMUNICATION IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHOM IT IS
ADDRESSED.  IT MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR PROTECTED
FROM DISCLOSURE BY LAW.  IF YOU ARE NOT THE RECIPIENT TO WHOM THE COMMUNICATION IS
DIRECTED, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS
COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU RECEIVE THIS COMMUNICATION IN ERROR, PLEASE
NOTIFY US IMMEDIATELY BY TELEPHONE.



**From:** **John Gibson** peakrut@yahoo.com  🖉
**Subject:** Requested info.
**Date:** June 27, 2023 at 8:37 AM
**To:** wbarton@bartonandroper.com, jody cumminsfamily.org jody@cumminsfamily.org, Caroline Jones carolinejones5166@gmail.com, jamie kirtley jamiekirtley@sbcglobal.net, Jill Gibson jgibson@lynchconger.com, Renee Treadwell rtreadwell56@gmail.com

Whit, why did you ignore all my requests for information and then demand payment on a note you KNEW my father was against?

I was asking you for information so I could settle this. But you refused to provide it. Then I got accused of not trying to work things out - which is completely false.

Is that a breach of fiduciary duty? I think it is.

Is it fraud?

Kind regards, John.





Could you please provide me with any notes that exist between my father and I?

Kind regards,

John Gibson III

Jill

I did exactly what Daddy told me
to do. He told me that the
amount of the note needs to be
discounted because you
overpaid. No one knew by how
much, because we needed
information from you, so he told
me to put the full amount of the
note in the will until we
determined by how much you
overpaid.

As we all know, he died before he
got a chance to rewrite the will.
But you also never provided the
documentation Daddy wanted,
that would show that you over
paid for the farm.

His last instructions to me about
this was to get the information
from you and discount the note. I
have been trying to do that for
the last year and you have given

Gibson 026



5.42                                        5G

2 People >

I thought Renee was going to
be gone. But since she's not,
might be good to invite her
after checking w Nina. Renee is
fully vaccinated so that helps.

Jill Gibson

 What about john?

Jamie Kirtley

He wouldn't care

 I'm not sure he'll be there.  He's
still in pretty bad condition

Jill Gibson

 With his ears?  Divorce?  Sadly
there's a lot to choose from.

Jamie Kirtley

 Yeah I think all of the above

Jill Gibson

 I feel so bad for John.

Jun 20, 2021 at 9:23 PM

Jill Gibson                              

   iMessage            🎤

Gibson 027

8:25                          .ıl 5G 🔋

  

2 People ›

Jamie Kirtley

Yeah I think his attitude is pretty much that he's worked his ass off to save the farm for Daddy- period. And he should be thanked instead of questioned. I don't see his attitude changing



> And then Renee said Daddy paid off farm liens himself. Quite a few missing pieces.

Jamie Kirtley

 Definitely

Jill Gibson

I have a case with the almost exact same fax. I am representing a woman whose mother recently passed away and her mother had made hundreds of thousands worth of loans to her brother. Now my client was trying to get the brother to pay the estate back.
.
The brother claims to of made

   iMessage                    

Gibson 028



9:03

5G

3

CG

3 People >

Mar 18, 2021 at 9:52 AM

Send me your email for the zoom call. Bud can set it up. I think Whit Barton's secretary is out and he was relying on her.

Caroline Gibson Jones

carolinejones5166@gmail.com

Jamie Kirtley

Jamiekirtley@sbcglobal.net

Check your email for invite.

👍

Bud put till 4:30 — I guess because he didn't want it to turn off if we weren't quite finished at one hour.

Mar 18, 2021 at 1:21 PM

👍

I'm about to dig out those papers that came in the mail just to have in front of me. Y'all look over them too in case you have a question.

iMessage

Gibson 029

9:17

  5G 

3 People 

 try to keep positive energy today and hereafter ✌️

Caroline Gibson Jones

Idk what has been said up until this point...

But as far as the estate goes, daddy would not have put in the will what John owed, if he didn't intend for him to pay it back...for us.

And Daddy knew john was manipulative...I think he would be proud of us for standing up for ourselves and getting what we all deserve.

John does not deserve all that money for himself. I have 5 children and my 1/5 would be life-changing. I will do what I need to do to get my 1/5. And I'd like to think Daddy would be supportive of that. Regardless of what it's doing to john.

Jamie, I was not in a position to

  iMessage 

Gibson 030

Jamie >

> Do you think Daddy wanted John to pay the note they signed?

> Do you think Daddy intended to give John the farm?

I think daddy intended for it to be discounted. It wasn't.

> We tried to discount it. We asked john for information regarding a discount and he never gave us anything. Instead he said daddy gave him the farm.

I disagree

> John moved it to federal court.

> What do you disagree with?

Gibson 031



Jamie >

What do you disagree with?

What do you disagree with?

I don't think John owes the total note and that is what is demanded.

How much should we discount it?

Do you think daddy wanted it discounted by 64%?

Over half?

I'm fine to discounted that much if John could show us the rationale. Daddy told me John could provide the numbers to me and we've asked John for the

iMessage

Gibson 032



Jamie ›

It was just between the estate and John.  I was not a party to it.

John was probably referring to the email you sent Whit Barton. I'm glad we're talking about this because it needs to be addressed.  But jack and I are about to go to lunch so maybe we can take more later.

Gibson 033

Jamie >

John was probably referring to the email you sent Whit Barton. I'm glad we're talking about this because it needs to be addressed.  But jack and I are about to go to lunch so maybe we can take more later.

I distinctly remember asking Daddy how much should the note be discounted, and Daddy said he didn't know, but that John had the paperwork.

If I knew John would never give us any paperwork, I would've pressed Daddy about it more. But I just assumed John would bring over the paperwork because he said he would do so.

I thought it was going to be easy. Boy was I wrong!

I also distinctly remember Daddy saying "the note is you girls' inheritance." he said that several times

  iMessage



12:09

CG

2 People ›

any further debt on the note.

Caroline Gibson Jones

Go have fun!!  I'm about to go teach a barre class and clear my head too.

Jill, 😂😂 Try real hard to be fun. 😂😂

I'm about to call the hogs

Jill Gibson

OK my phones not put down yet... 🙂. Whits  original offer did not propose releasing John from the debt. That is what John proposed in his response to Witt.

[redacted]

Got it. Thanks!

Go be real fun! 🤣

Jun 21, 2022 at 5:23 PM

Jill Gibson

iMessage

Gibson 035

12:10      .ıll 5G 🔋



< 10    CG

2 People >

I'm going to give a call to my friend Cal McCastlain. He is a tax lawyer and his firm deals with this stuff all the time. Cal is also a farmer and land owner. I'm sure he would have lunch or a cup of coffee with me to hammer out general next steps. And I can ask him to give me an estimate of what it would cost the estate to pursue the note.

👍

I'm hoping we can come up with an executor who does not have to be paid. If the court has to appoint a person it would be more expense on top of hiring an attorney

Jill, if I asked mama what she thought about John "lawyering up" to take your license away, she would say "oh, don't pay any attention to John. He's just blowing off steam."

Jill Gibson

  iMessage 🎤 

Gibson 036

12:14

  

CG

2 People

In my last conversation with John which took place in Dermott when Jill was here, I asked him why he couldn't have just settled this up with Daddy before he died. I told John that he had plenty of time to deal with it. I told him that Daddy had hoped to use some of that money to to retire on. I was being very nice, but just told him that if he had dealt with it when daddy was begging him to, then it wouldn't be in our hands now.

We didn't create this. John did.

Jill, I just hope you don't think you did anything wrong.

Caroline Gibson Jones

Jill you absolutely did nothing wrong.

And even as far as Jamie is concerned.

  iMessage 

Gibson 037

12:15

‹ 10    CG
2 People

When did he say that?  What was that one for?  There's just so much $$ to keep straight that he receives

CG  Received

John is saying that if he agrees to let the proceeds from sale of Robertson property go to the estate to go toward debt on note, then he gets released from the rest of the note. His share of Robertson sale would be $25k

Caroline Gibson Jones

Ohhh I read it wrong

CG  I thought you meant there was another promissory note for 25k

No. The sale would produce $25k

Caroline Gibson Jones

CG  Gotcha

   iMessage

Gibson 038